### J. P. Smith et al. v. J. J. Lang.

#### No. 73.

**1. Judgment as Collateral Security — Payment — Principal and Collateral Security Debts Mutually Extinguished, When.** — B. obtained a judgment against D. and others, and afterwards held, by transfer and as collateral security for its payment, two judgments against one S., which were the property of some of the defendants in the principal judgment against D., and which in their aggregate exceeded the amount then remaining due on such principal judgment. S. paid to B. such remaining amount, and took a transfer of the principal judgment to himself. *Held:*

1.   Such transfer operated as a transfer of the two judgments held as collateral security, which were thereby, as against S.. the judgment debtor therein, extinguished to the extent of the amount he had so paid for the principal judgment; and conversely, the transaction operated as an extinguishment of the principal judgment, so that a subsequent execution sale of lands of the defendant made thereunder by S. was void.

2.   The fact that at the time S. took the transfer of the principal judgment he held notes against one of the judgment debtors therein—the one whose lands he afterwards had sold thereunder—could not be used to defeat the specific purpose for which the two collateral judgments were pledged, viz., the protection of all the judgment debtors in the principal judgment.

**2. Parol Evidence of Written Instrument.**—Where the character of certain notes as pledges was the issuable fact, and this matter rested in parol, it was not error to allow a witness to state, without producing the notes themselves, the date and amount thereof, and the names of the signers, and to trace them to the judgments into which they had been merged, and which judgments were themselves in evidence.

Appeal from Wichita.   Tried below before Hon. P. M. Stine.

*R. Cobb*, and *Davis & Harris*, for appellants.— 1.   The court erred in the conclusion of law, that defendant Smith, by purchasing the judgment in favor of the Boatman Savings Bank against J. W. Dabbs et al., became also the owner of the two judgments against himself and Reed and Thurmond; and also in holding that the judgment in favor of the Boatman Savings Bank v. J. W. Dabbs et al. became satisfied and extinguished by the purchase of the same by defendant Smith.   Coleb. on Coll. Sec., 272, 279; 3 Pome. Eq. Jur., secs. 791, 1419, note 1; Sheld. on Subr., secs. 110,

112; Jones on Pledges, sec. 531; Freem. on Judg.; 467a; Thorp v. Wegefarth, 93 Am. Dec., 737.

2. The court erred in not considering the notes produced in evidence by defendant Smith against the Stone Cattle and Pasture Company, which said defendant owned on the 20th day of May, 1886, and which showed that at the time he bought the judgment in favor of the Boatman Savings Bank and against J. W. Dabbs & Co. et al., he did not owe the Stone Cattle and Pasture Company anything. Watson v. Flanagan, 14 Texas, 354; Coleb. on Coll. Sec., 272; Sheld. on Subr., sec. 112; 1 Dan. on Neg. Inst., sec. 784.

*C. C. Potter* and *J. H. Cobb*, for appellee.—1. A transfer or sale of the principal debt carries with it all collaterals or pledges held for its payment. Coleb. on Coll. Sec., 107, sec. 19; Jones on Chat. Mort., sec. 503; Freem. on Judg., sec. 431; The Batesville Inst. v. Kaufman, 18 Wall., 151; Lindsey v. Bates, 42 Miss., 397; Hurt v. Wilson, 38 Cal., 263.

2. The purchase of the judgment in cause number 1590, Boatman Savings Bank v. J. W. Dabbs et al., by J. P. Smith, being a purchase pro tanto of the two collateral judgments against himself in causes numbers 1755 and 1687, the said judgments in causes numbers 1755 and 1687 were to that extent satisfied; and this was an extinguishment of the former judgment. Freem. on Judg., sec. 467; Sherwood v. Collier, 24 Am. Dec., 264; Fowler v. Smith, 5 Lawyers' Rep. Ann., 721; 2 Pome. Eq. Jur., sec. 797; 1 Jones on Mort., secs. 864, 876; Brandt on Surety., sec. 261; Coleb. on Coll. Sec., sec. 102.

3. The testimony of the witness Rollins as to the notes was as to a collateral matter, and was admissible. The material part of the testimony, viz., that the judgments in causes numbers 1687 and 1755, were held as collateral to the judgment in cause number 1590, rested in parol. 1 Greenl. Ev., sec. 89.

TARLTON, CHIEF JUSTICE.—This appeal is prosecuted by J. P. Smith and the City Bank of Sherman from a judgment rendered April 30, 1890, by the District Court of Wichita County, in an action of trespass to try title, wherein J. J. Lang, appellee, as plaintiff, recovered from appellants, as defendants, seven tracts, or 4936 acres of land.

This land was at one time admittedly the property of the Stone Cattle and Pasture Company, and from it, as a common source, the appellants and the appellee deraign title.

*Conclusions of Fact.*—August 28, 1885, J. J. Lang recovered a judgment for the sum of $26,621 against the Stone Cattle and Pasture Company and others, in the District Court of Wise County.

December 8, 1886, under a valid alias execution and levy, the land

was sold at sheriff's sale, and Lang became the purchaser thereof.    Such is his title.

April 24, 1885, the Boatman Savings Bank recovered a judgment for the sum of $20,740 against J. W. Dabbs, R. M. Henderson, A. A. Henderson, S. G. Tomlinson, Walker Fore, W. J. Morphy, as principals, and against the Stone Cattle and Pasture Company, J. W. Wilson, J. W. Sacra, John H. Stone, F. J. Hall, and R. S. Rollins, as endorsers.

June 1, 1886, by virtue of this judgment and alias process issued thereon, the land referred to was sold at sheriff's sale, J. P. Smith, the appellant, becoming the purchaser.    He conveyed to his codefendant, the City Bank of Sherman, an undivided one-fourth interest, by deed dated February 25, 1888.    This constitutes the title of appellants.

In July, 1884, R. M. Henderson, one of the principal debtors in the judgment of the Boatman Savings Bank v. J. W. Dabbs et al., delivered to R. S. Rollins, one of the endorsers upon the note upon which that judgment was rendered, two notes against J. P. Smith, J. B. Reed, and E. G. Thurmond.    The purpose of this transfer and delivery was to secure Rollins, the Stone Cattle and Pasture Company, and the other endorsers upon the note to the Boatman Savings Bank.

On November 11, 1885, judgment was had against Smith, Reed, and Thurmond for the sum of $8250 on one of these collateral security notes; and on the same day the Boatman Savings Bank recovered a judgment against the same defendants upon the other one of the notes for the sum of $8250.    A stay of execution on both these judgments was had until June 1, 1886.

March 2, 1886, the Stone Cattle and Pasture Company transferred to F. M. Daugherty, *subject to the interest of the Boatman Savings Bank*, the two judgments last mentioned.

On May 20, 1886, the Boatman Savings Bank, by its attorneys, transferred, in consideration of the sum of $8537.35, to J. P. Smith the judgment of the Boatman Savings Bank v. J. W. Dabbs et al.

The consideration paid by Smith, $8537.35, was the exact amount then remaining due upon the judgment in favor of the Boatman Savings Bank v. J. W. Dabbs et al.    The amount due upon the two judgments against Smith, Reed, and Thurmond, held, as above indicated, by the Boatman Savings Bank as collateral security, was $16,500, with interest at 10 per cent from their date.

On May 20, 1886, the date of the transfer by the Boatman Savings Bank through its attorneys to Smith, the latter held against the Stone Cattle and Pasture Company four promissory notes, as follows:

1.  A note for $9200, dated August 1, 1884, with 10 per cent interest from date, payable one year after date to the order of S. A. McAdams, endorsed by him in blank, and credited September 1, 1885, with $2540.

2.  A note for $6583, dated July 1, 1884, with 10 per cent interest per

annum from date, payable one year after date to the order of J. M. Rols, and by him endorsed in blank, and credited September 1, 1885, with $7140.

3. A note for $3982.75, dated July 1, 1884, with 12 per cent interest from date, payable one day after date, to the order of J. M. Rols, and by him endorsed in blank, and credited January 12, 1885, with $500.

4. A note for $8781.66⅔, dated July 15, 1884, with 10 per cent interest from date, payable one year after date to the order of R. McCubbin, and by him endorsed in blank, and credited September 1, 1885, with $5140.

*Conclusions of Law.*—Under the foregoing facts, we concur with the trial court, that the Boatman Savings Bank was subrogated, as regards the judgments against Smith, Reed, and Thurmond, to the rights of the original owners of those judgments, Henderson, Dabbs, and others, principals in the main judgment, and of Rollins, the Stone Cattle and Pasture Company, and others who were sureties therein. Coleb. on Coll. Secur., secs. 217, 212. These collateral judgments against Smith and others were held by the Boatman Savings Bank as a pledge to secure the payment of the original judgment against Dabbs and others. As a pledge, they were an incident to the debt evidenced by the main judgment, and were so transferable with the latter. Coleb. on Coll. Secur., sec. 79, p. 107; Freem. on Judg., sec. 431; The Batesville Inst. v. Kaufman, 18 Wall., 151.

We fail to appreciate the distinction, in this respect, sought to be drawn by appellants' counsel between a pledge and a mortgage. The thing pledged, in its character as a security, is as much an incident of the debt intended thereby to be secured as would be a mortgage. The transfer of the main judgment to Smith operated as a transfer of the collateral, and going thus hand in hand, so to speak, the latter, to the extent of the former, must be held to have operated as a cancellation of the former. Otherwise it will have altogether lost its character as a pledge for the former. It is not to be questioned, that had Smith paid to the Boatman Savings Bank the amount of the collateral judgments against himself, such payment would to the extent thereof have discharged the main judgment. Unless the converse be true, the purpose with which the Boatman Savings Bank held the collateral judgments would be defeated, and Dabbs, with the remaining principals, and the Stone Cattle and Pasture Company and the remaining sureties on the main judgment, would be deprived of all benefit from the collateral held for them by the Boatman Savings Bank. It would seem that payment, under such circumstances, of the one judgment would operate pro tanto to extinguish the others, and vice versa. Freem. on Judg., sec. 467.

When Smith took a transfer from the Boatman Savings Bank of the judgment against Dabbs, Henderson, and others as principals, and the

Stone Cattle and Pasture Company as endorsers, it can not be so accurately said that he purchased the judgment as that he paid it. And this is true, because he owed the amount which he paid; not indeed for the reason that he was directly a party to the judgment which was transferred to him, but for the reason that he was a debtor in two judgments held by the transferrer as a security and a pledge for the judgment transferred, and that as between himself and the Stone Cattle and Pasture Company he was primarily liable. His obligations, reduced to judgments, were held by the Boatman Savings Bank as a security for the obligation of Dabbs and of the cattle company which he purports to have purchased. When he, with J. D. Reed and E. G. Thurmond, executed the notes on which were founded the judgments against him, he contracted that these notes might be assigned by their holders as a pledge or security for any debt which might be due by them. He must be held then to have contracted for their payment in contemplation of the fact that they might or would be assigned to the Boatman Savings Bank (as to any other person, natural or artificial), to whom their payees might become indebted. He is not, under the facts stated, to be regarded as occupying the attitude of a stranger, taking as such an assignment of the judgment. He did not *purchase* it; he *paid* it. Otherwise the very purpose for which his primary obligations had been legitimately pledged would be defeated.

It can not be said that this interpretation of the transaction produces a result which will operate as a hardship upon Smith. The money paid by him upon the principal judgment will have been applied to the payment of his own obligations, and in a manner which might be considered as within his contemplation at the time he bound himself by the promissory notes afterwards pledged to secure the debt of their holders. The latter will have secured the benefit of the collateral securities, legitimately obtained and pledged by them to the payment of their obligation; and the Boatman Savings Bank, the pledgee, will have collected the amount justly due it. Thus, " all things" between the several parties " will have been made even," and the behests of equity fully subserved.

The fact, insisted upon by appellant, that at the time of the transfer by the Boatman Savings Bank to Smith the latter held other notes of the Stone Cattle and Pasture Company, does not affect the conclusion above expressed. These notes can not, as we think, be used to thus defeat the specific purpose with which the judgments against Smith were pledged, not only in the interest of the Stone Cattle and Pasture Company, but also of its cosureties and others, principals in the main judgment.

The further fact which appellants sought to prove, that in 1888, F. M. Daugherty, assignee (subject to the rights of the Boatman Savings Bank) of the collateral judgments, brought suit against Smith to revive these judgments, is alike, in our opinion, immaterial. That suit and the issues therein involved must be regarded as " res inter alios acta."

Nor do we find merit in the contention of appellants against the admissibility of the testimony of the witness Rollins, wherein he refers to the notes against Smith, Reed, and Thurmond, giving the names of those who signed them, and stating their date and amounts and the particular notes on which the judgments against Smith, Reed, and Thurmond were rendered. The character of these notes as pledges was the issuable fact in this connection. This fact rested in parol. It could not be otherwise proved, because it did not otherwise exist. The notes themselves were merged in judgments and the judgments were read in evidence. We do not think that it was improper that the witness should be permitted, in explanation of this issuable fact, to state, without producing the notes themselves, the date and amount thereof and the names of the signers, and to trace them to the judgments, which were themselves introduced. This testimony seems to us to have been but collateral to the main issue. 1 Greenl., sec. 89.

The further fact, that at the date of the transfer to Smith the collateral judgments were not mature, is also, in our opinion, immaterial, since they were mature on June 1, 1886, the date of his purchase at the sheriff's sale. As in our opinion the judgment on which this sale rested had been by Smith, in the manner above indicated, paid off and satisfied, there was then and is now no basis for appellants' title.

The judgment is affirmed.

*Affirmed.*

Delivered March 30, 1893.